**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SEREFINO CASTILLO,

Defendant - Appellant.

No. 96-2251

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D. Ct. No. CR-95-634-JC)**

---

John Van Butcher, Assistant Federal Public Defender (Ann Steinmetz, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Albuquerque, New Mexico, appearing for Defendant-Appellant.

Demetra Lambros, Attorney, U.S. Department of Justice, Washington, DC (John J. Kelly, United States Attorney, and Tara C. Neda, Assistant U.S. Attorney, District of New Mexico, Albuquerque, New Mexico, with her on the brief), appearing for Plaintiff-Appellee.

---

Before TACHA, HOLLOWAY, and MURPHY, Circuit Judges.

---

TACHA, Circuit Judge.

---

A jury convicted Serefino Castillo of four counts of sexual abuse in

violation of 18 U.S.C. § 2242(1) and four counts of sexual abuse of a minor in violation of 18 U.S.C. § 2243(a). At trial, the district court admitted certain evidence against the defendant pursuant to Federal Rule of Evidence 414. The defendant now appeals the admission of that evidence, contending (1) that Rule 414 was not effective at the time of his trial, (2) that Rule 414 violated his constitutional rights to due process and equal protection under the Fifth Amendment, as well as the right to be free of cruel and unusual punishment under the Eighth Amendment, and (3) that the Rule 414 evidence should have been excluded because of its great prejudicial value. We hold that Rule 414 was effective at the time of Mr. Castillo's trial and that it does not violate the Constitution. We remand this case to the district court, however, for an adequate explanation of its Rule 403 determination.

In addition to his Rule 414 arguments, Mr. Castillo raises several other issues on appeal, none of which provides grounds for reversal.

**Background**

Serefino Castillo lives on the Navajo Reservation in Crownpoint, New Mexico. He and his wife have five children. The indictment charged the defendant with four acts of sexual abuse—three acts towards his daughter N.C. and one towards his daughter C.C. Each of these alleged acts gave rise to one count of sexual abuse under 18 U.S.C. § 2242 and one count of sexual abuse of a

minor under 18 U.S.C. § 2244. At trial, the district court allowed N.C. to testify not only to the three acts of abuse against her with which the defendant was charged, but also to a fourth act of sexual abuse against her that was not charged in the indictment. Similarly, C.C. testified to two acts of sexual abuse committed against her by the defendant in addition to the one charged in the indictment. The district court admitted the evidence pursuant to Rule 414.[1]

**Discussion**

## I. Federal Rule of Evidence 414

As a preliminary matter, we address whether Rule 414 was effective at the time of Mr. Castillo's trial. This Circuit recently held that Rules 413-415 "apply to all trials commenced after July 10, 1995." United States v. Enjady, , __ F.3d __, __, 1998 WL 17344, at *2 (10th Cir. Jan. 20, 1998). Mr. Castillo's trial commenced in May 1996, well after July 10, 1995. Accordingly, Rule 414 applies to his trial. We therefore proceed to the other issues raised by Rule 414.

### A. Constitutional Challenges to Rule 414

Federal Rule of Evidence 414 reads, in pertinent part:

---

[1] The doctors who treated the daughters also testified to acts of abuse not charged in the indictment. The doctor who treated N.C. testified that N.C. said her father "has done this at least ten times before." Tr. at 102. Similarly, the doctor who examined C.C. testified that C.C. said her father had digitally penetrated her on prior occasions. See Tr. at 139. Because the trial court appeared to admit this testimony under Fed. R. Evid. 803(4), however, see Tr. at 102, we do not consider it on this appeal, which relates to evidence admitted under Rule 414.

> In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

Fed. R. Evid. 414(a). This rule allows the prosecution to use evidence of a defendant's prior acts for the purpose of demonstrating to the jury that the defendant had a disposition of character, or propensity, to commit child molestation. In the cases to which this rule applies, it replaces the restrictive Rule 404(b), which prevents parties from proving their cases through "character" or "propensity" evidence. See United States v. Meachum, 115 F.3d 1488, 1491 (10th Cir. 1997). Here, the trial court admitted evidence of the defendant's prior acts of child molestation under Rule 414 for the purpose of demonstrating his character. Mr. Castillo now challenges the admission of that evidence on constitutional grounds. We review de novo the district court's conclusion that Rule 414 is constitutional. See United States v. Hampshire, 95 F.3d 999, 1001 (10th Cir. 1996), cert. denied, 117 S. Ct. 753 (1997).

### 1. Due Process

We first consider whether Federal Rule of Evidence 414 violates the due process rights of a criminal defendant under the Fifth Amendment.[2] We have faced the issue of Rule 414's constitutionality under the Due Process Clause once before. In United States v. Meachum, 115 F.3d 1488, 1491-96 (10th Cir. 1997), we analyzed a defendant's challenge to Rule 414 evidence and concluded that "under the circumstances of this case, the prior acts evidence was not so prejudicial as to violate the defendant's constitutional right to a fair trial." Id. at 1495 (emphasis added). Meachum's holding was limited to the facts of the case before it. The defendant here, unlike the defendant in Meachum, challenges the rule in the abstract, thus presenting us with a facial challenge rather than an as-applied challenge. See Sanjour v. E.P.A., 56 F.3d 85, 92 n.10 (D.C. Cir. 1996) (en banc) (noting that the distinction between facial and as applied challenges is that facial challenges "request that the court go beyond the facts before it" to consider whether the law is unconstitutional).

_____

[2]We refer here to the Due Process Clause of the Fifth Amendment rather than the Fourteenth Amendment because this is a federal rather than a state rule. See, e.g., United States v. Phelps, 17 F.3d 1334, 1343 n.12 (10th Cir. 1994).

We therefore now analyze the facial challenge before us.[3]

### a. Prior Cases

In <u>United States v. Enjady</u>, this court recently held that Federal Rule of Evidence 413, which allows character evidence in sexual assault cases, does not on its face violate the due process rights of a defendant. 1998 WL 17344, at *7, __ F.3d __, __ (10th Cir. Jan. 20, 1998). We now hold that Rule 414 does not on its face violate the Due Process Clause.

We begin by noting that some of the Supreme Court's statements regarding propensity evidence indicate that the ban on such evidence may have a constitutional dimension. For instance, in explaining the common-law prohibition against propensity evidence, the Court said:

---

[3] We recognize that the mere existence of <u>Meachum</u> may indicate that there is no facial violation here. In <u>United States v. Salerno</u>, 481 U.S. 739 (1987), the Supreme Court stated that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that <u>no set of circumstances exists</u> under which the Act would be valid." <u>Id.</u> at 745 (emphasis added). <u>Meachum</u> represents one circumstance under which Rule 414 operated constitutionally, and that is enough, under a strict reading of <u>Salerno</u>, to reject the facial challenge before us.

Nonetheless, <u>Meachum</u> can be read as a case interpreting Rule 404(b) rather than Rule 414. See <u>Meachum</u>, 115 F.3d at 1494 ("We therefore analyze the admission of this evidence from the perspective of Rule 404(b)."). Furthermore, because there has been some debate over the continued vitality of <u>Salerno</u>, see <u>Washington v. Glucksberg</u>, 117 S. Ct. 2302, 2304-05 (1997) (Stevens, J., concurring), and because the Supreme Court may have overruled it, at least in some contexts, see <u>Jane L. v. Bangerter</u>, 102 F.3d 1112, 1116 (10th Cir. 1996) (noting that Supreme Court did not apply <u>Salerno</u> standard to facial challenge of abortion statute in <u>Planned Parenthood v. Casey</u>, 505 U.S. 833 (1992)), we provide additional reasoning for our holding in this case.

> Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. . . . The State may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and *deny him a fair opportunity to defend against a particular charge*.

Michelson v. United States, 335 U.S. 469, 475-76 (1948) (emphasis added); see also Spencer v. Texas, 385 U.S. 554, 571 (1967) (Warren, C.J., concurring in part and dissenting in part) (suggesting that propensity evidence violates the Due Process Clause); Brinegar v. United States, 338 U.S. 160, 173-74 (approving exclusion of prior arrest at trial and noting that rules of evidence are "to some extent embodied in the Constitution"). Nonetheless, more recently the Court expressly reserved the question of whether admission of propensity evidence violates the Due Process Clause. See Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991).

Our previous cases in this area also leave open the question whether the ban on propensity evidence derives solely from the rules of evidence, or also from the Constitution. We have said that the exclusion of evidence of prior acts "is not a simple evidentiary [issue], but rather goes to the fundamental fairness and justice of the trial itself." United States v. Burkhart, 458 F.2d 201,

- 7 -

205 (10th Cir. 1972) (en banc); see also Tucker v. Makowski, 883 F.2d 877, 881 (10th Cir. 1989) (improper admission of evidence of prior crimes "raises a due process issue"); United States v. Biswell, 700 F.2d 1310, 1319 (10th Cir. 1983) (citations omitted) ("Improper admission of a prior crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself."). Despite some of our cases' references to constitutional standards, however, they rely more heavily on common law precedent, see Burkhart, 458 F.2d at 206, or the Federal Rules of Evidence, see Biswell, 700 F.2d at 1316 (discussing Rule 404(b)), than on the Constitution. See also United States v. Hogue, 827 F.2d 660, 662 (10th Cir. 1987) (discussing Biswell and Burkhart in non-constitutional terms). In only one prior case did a defendant's objection to propensity evidence rest solely on constitutional grounds. There, we noted the constitutional question but "ma[d]e no comment on the merits of petitioner's allegations." Tucker, 883 F.2d at 881. None of our cases stands directly for the proposition that an evidentiary rule allowing admission of propensity evidence, ipso facto, violates the Due Process Clause. We now turn to that question in the specific context of Rule 414.

### b. Analysis

The Due Process Clause has limited operation beyond the specific

guarantees enumerated in the Bill of Rights.  See Dowling v. United States, 493

U.S. 342, 352 (1990).  The Due Process Clause will invalidate an evidentiary

rule only if the rule "violates those fundamental conceptions of justice which

lie at the base of our civil and political institutions and which define the

community's sense of fair play and decency."  United States v. Lavasco, 431

U.S. 783, 790 (1977) (citations and internal quotation marks omitted), cited in

Dowling, 493 U.S. at 353.  The Supreme Court has "defined the category of

infractions that violate 'fundamental fairness' very narrowly."  Dowling, 493

U.S. at 352-53.  For three reasons, we conclude that Rule 414 falls outside that

narrow category.

First, "[o]ur primary guide in determining whether the principle in

question is fundamental is, of course, historical practice."  Montana v.

Egelhoff, 116 S. Ct. 2013, 2017 (1996).  The ban on propensity evidence dates

back to English cases of the seventeenth century.  See Hampden's Trial, 9 How.

St. Tr. 1053, 1103 (K.B. 1684).  In addition, courts in the United States have

enforced the ban throughout our nation's history, see, e.g., Boyd v. United

States, 142 U.S. 450, 458 (1892), and we assume for purposes of this case,

without deciding the matter, that because of the ban's lineage and significance

in our jurisprudence, it is a protection that the Due Process Clause guarantees.

Nonetheless, the historical record regarding evidence of one's sexual

character is much more ambiguous.  More than a century ago, courts regularly admitted a defendant's prior acts as proof of the crime of incest.  For example, the Michigan Supreme Court said:

> The general rule in criminal cases is well settled, that the commission of other, though similar offenses by the defendant, can not be proved for the purpose of showing that he was more likely to have committed the offense for which he is on trial . . . . But the courts in several of the States have shown a disposition to relax the rule in cases where the offense consists of illicit intercourse between the sexes.

People v. Jenness, 5 Mich. 305, 319-20 (Mich. 1858) (quoted in Thomas J. Reed, *Reading Gaol* Revisited: Admission of Uncharged Misconduct Evidence in Sex Offender Cases, 21 AM. J. CRIM. L. 127, 167 n.223 (1993)).  In the nineteenth and early twentieth centuries, some states developed a "lustful disposition" rule, allowing evidence of sexual acts other than the one charged in order to prove the defendant's disposition to commit a sex crime.  See generally 2 JOHN H. WIGMORE, WIGMORE ON EVIDENCE §§ 398-402 (Tillers rev. 1983); Admissibility, in Prosecution for Sexual Offense, of Evidence of Other Similar Offenses, 167 A.L.R. 565 (1947).  Many of the cases in this area of the law concern sexual offenses against children.  By the early 1920's, twenty-three states had a "lustful disposition" exception applicable to cases of statutory rape.  See Reed, 21 AM. J. CRIM. L. at 171.  Today, an even greater number of states retain the "lustful disposition" rule in cases involving sex offenses, including

cases of child molestation.  Id. at 188.

Thus, the history of evidentiary rules regarding a criminal defendant's sexual propensities is ambiguous at best, particularly with regard to sexual abuse of children.  The existence of this ambiguity does not leave us uncertain of the constitutional result, however; rather, it favors the government.  As the Supreme Court stated in Egelhoff, "It is not the [government] which bears the burden of demonstrating that its rule is 'deeply rooted,' but rather [the defendant] who must show that the principle of procedure violated by the rule (and allegedly required by due process) is 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  Egelhoff, 116 S. Ct. at 2019 (quoting Patterson v. New York, 432 U.S. 197, 202 (1977)) (double internal quotation marks omitted).

In addition to the historical record, it is significant that other rules of evidence have been found constitutional even though they allow evidence presenting a risk of prejudice similar to that presented by Rule 414 evidence. When a court admits evidence of a defendant's propensities, such as evidence of the defendant's prior criminal acts, it creates "'the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment.'"  Old Chief v. United States, 117 S. Ct. 644, 650 (1997) (quoting United States v. Moccia,

- 11 -

681 F.2d 61, 63 (1st Cir. 1982)). Those risks of prejudice are present not only when the evidence is offered to show propensity, but whenever a defendant's prior bad acts are admitted. Whenever such evidence is before the jury, the jury may be tempted to convict for the prior bad act, or what it says about the defendant's character, rather than what it says about the likelihood that the defendant committed the charged crime. Therefore, the Supreme Court has described the risk of prejudice associated with evidence admitted under Rule 404(b)--which allows evidence of prior bad acts--in almost precisely the same terms as that associated with propensity evidence. The Court has said that Rule 404(b) evidence presents the risk that "the jury may choose to punish the defendant for the similar rather than the charged act, or [that] the jury may infer that the defendant is an evil person inclined to violate the law." Huddleston v. United States, 485 U.S. 681, 686 (1988); id. at 691 (citing Michelson v. United States, 335 U.S. 469, 475-76 (1948)). Nevertheless, since the Court upheld the common law equivalent of Rule 404(b), see Lisenba v. California, 314 U.S. 219, 227-28 (1941), there has been no doubt that it is a constitutional rule, see Huddleston, 485 U.S. 681 (interpreting Rule 404(b) without commenting on its constitutionality). Similarly, a state does not violate due process when it allows evidence of a defendant's prior conviction, relevant only to his sentencing, at the guilt-determination stage. See Marshall v.

- 12 -

Longberger, 459 U.S. 422, 438 n.6 (1983); Spencer v. Texas, 385 U.S. 554, 564 (1967).

The third and most significant factor favoring Rule 414's constitutionality is the existence of procedural protections in Rule 402 and, in particular, Rule 403. In Huddleston, the Supreme Court addressed the argument that because evidence of prior acts is so prejudicial, a district court should not admit 404(b) evidence unless the proponent of the evidence has proved the existence of the prior act by a preponderance of the evidence. Although Huddleston was not a constitutional decision, it is important to our inquiry because the defendant here—like those in Huddleston—argues that "prior acts" evidence creates an unacceptable risk of prejudice. The Huddleston Court ruled that even when evidence has a potentially great prejudicial effect, as Rule 404(b) evidence does, Rules 402 and 403 adequately control the prejudicial effect. See Huddleston, 485 U.S. at 691.

Rule 402 requires that all evidence be logically relevant to a material issue in the case. Rule 402 applies to Rule 414 evidence. Cf. United States v. Guardia, 135 F.3d 1326, 1328 (10th Cir. 1998) (applying relevance requirement to Rule 413 evidence). More importantly, however, the Rule 403 balancing test applies to evidence admitted under Rule 414. See United States v. Meachum, 115 F.3d 1488, 1495 (10th Cir. 1997). Rule 403 excludes evidence, even if it is

- 13 -

logically relevant, if its prejudicial effect substantially outweighs its probative value. Because of the presence of these protections, only a very narrow question remains—whether admission of Rule 414 evidence that is both relevant under 402 and not overly prejudicial under 403 may still be said to violate the defendant's due process right to a fundamentally fair trial. To ask the question is to answer it.

The due process violation that the defendant alleges here is that Rule 414 evidence is so prejudicial that it violates the defendant's fundamental right to a fair trial. Application of Rule 403, however, should always result in the exclusion of evidence that has such a prejudicial effect. See Fed. R. Evid. 403 (excluding evidence if its probative value is *substantially outweighed by danger of unfair prejudice*). Thus, application of Rule 403 to Rule 414 evidence eliminates the due process concerns posed by Rule 414. See Enjady, 1998 WL 17344, at *6-7, __ F.3d at __ (finding Rule 413 constitutional because the Rule 403 balancing test applies); Kerr v. Caspari, 956 F.2d 788, 790 (8th Cir. 1992) (finding state lustful disposition rule constitutional because evidence is subjected to the state equivalent of the Rule 403 test).

For the above reasons, we hold that Rule 414 on its face does not violate the constitutional guarantee of due process. Thus, when reviewing a trial court's decision to admit Rule 414 evidence for constitutional error, the

- 14 -

appellate court must engage in a case-specific inquiry only, asking whether the evidence in the case was "so prejudicial in the context of the proceedings as a whole that [the defendant] was deprived of the fundamental fairness essential to the concept of due process." Scrivener v. Tansy, 68 F.3d 1234, 1239-40 (10th Cir. 1995) (citations and internal quotation marks omitted), cert. denied, 116 S. Ct. 1277 (1996).

### 2. Equal Protection

Rule 414 also does not violate the Constitution's promise of equal protection under the law. Although there is no Equal Protection Clause in the Fifth Amendment, the equal protection standards of the Fourteenth Amendment are incorporated into the Fifth Amendment's promise of due process. See Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 224 (1995). Under those standards, if a law "neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." Romer v. Evans, 116 S. Ct. 1620, 1627 (1996). In the previous portions of this opinion, we determined that the admission of character evidence allowed by Rule 414 does not burden the defendant's fundamental due process rights. Furthermore, the defendant does not belong to a suspect class. While the rule does treat those accused of child molestation differently than other criminal defendants, such a classification is

- 15 -

not subject to a heightened standard of review. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-41 (1985). Therefore, we ask only whether Rule 414 has a rational basis. See Romer, 116 S. Ct. at 1627.

Under the rational basis test, if there is a "plausible reason[] for Congress' action, our inquiry is at an end." United States R.R. Retirement Bd. v. Fritz, 449 U.S. 166, 179 (1980). We need not find that the legislature ever articulated this reason, nor that it actually underlay the legislative decision, see Flemming v. Nestor, 363 U.S. 603, 612 (1960), nor even that it was wise, see City of Dallas v. Stanglin, 490 U.S. 19, 27 (1989). There are plausible reasons for the enactment of Rule 414. "Congress' objective of enhancing effective prosecution of sexual assaults is a legitimate interest." Enjady, 1998 WL 17344, at *7, __ F.3d at __ . The government has a particular need for corroborating evidence in cases of sexual abuse of a child because of the highly secretive nature of these sex crimes and because often the only available proof is the child's testimony. See West Virginia v. Charles, 398 S.E.2d 123, 132-33 (W.Va. 1990). Rule 414 does not violate the Equal Protection Clause.

### 3. Eighth Amendment

Mr. Castillo also argues that Rule 414 violates the Eighth Amendment's prohibition against cruel and unusual punishment. In Robinson v. California, 370 U.S. 660, 666-68 (1962), the Supreme Court held that the government

infringes on an individual's Eighth Amendment rights when it imposes criminal punishment based on one's status, e.g., as a drug addict, rather than one's actions, e.g., purchasing drugs. According to Mr. Castillo, Rule 414 punishes him for his status as a person with a sexual interest in minors.

Rule 414 does not violate the Eighth Amendment. The rule does not impose criminal punishment at all; it is merely an evidentiary rule. In response, the defendant argues that because the evidence has such a strong prejudicial effect on juries, Rule 414 works as a de facto punishment for one's status as a sex offender. For the defendant to be correct, juries would have to ignore courts' instructions to them that they consider only the crime charged in deciding whether to convict. A central assumption of our jurisprudence is that juries follow the instructions they receive. Longberger, 459 U.S. at 438 n.6. Furthermore, as the Court did in Huddleston, we conclude above that the protections of Rules 402 and 403 adequately control any risk of prejudice. Thus, we find the defendant's Eighth Amendment argument unavailing.

**B. The 403 Balancing Test**

Having determined that Rule 414 is constitutional, and because Rule 403 applies to Rule 414 evidence, see Meachum, 115 F.3d at 1492, we ask whether the trial court nonetheless should have excluded the Rule 414 evidence under Rule 403 because of its prejudicial effect. We review a district court's decision

on Rule 403 for abuse of discretion.  See Guardia, 135 F.3d 1331.  Rule 403 allows a court to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Because of the unique nature of character evidence, it is important that the trial court "make a reasoned, recorded" statement of its 403 decision when it admits evidence under Rules 413-415.  Guardia, 135 F.3d at 1332.  The district court need not make detailed factual findings in support of its Rule 403 determination.  However, "[b]ecause of the sensitive nature of the balancing test in these cases, it will be particularly important for a district court to fully evaluate the proffered Rule 413 [or 414] evidence and make a clear record of the reasoning behind its findings."  Id. at 1331.

In the present case, the district court responded as follows to a request that it make a finding under Rule 403:

> I'm not at all certain that under 413 I have to make a decision on 403.  It seems to me that 413 is self-executing. . . . And if I have to make a finding under 403, then I find it's relevant and the probative value is not substantially outweighed by any prejudice.

Tr. Vol. IV at 130.  This statement falls short of our minimum requirements.  As we said in a similar case:

- 18 -

> [T]he district court's summary disposition of this issue renders it impossible for us to review the propriety of its decision. . . . Without any reasoned elaboration by the district court we have no way of understanding the basis of its decision . . . . As an appellate court, we are in no position to speculate about the possible considerations which might have informed the district court's judgment. Instead, we require an on the record decision by the court explaining its reasoning in detail.

United States v. Roberts, 88 F.3d 872, 882 (10th Cir. 1996) (per curiam) (citations and internal quotation marks omitted). We therefore remand this case to the district court for an explanation of its ruling under Rule 403.

## II. Spousal Privilege

Mr. Castillo argues that the district court erred in admitting the testimony of his wife, Lilia Castillo. We normally review the admission of evidence for abuse of discretion. Mr. Castillo's argument, however, raises a question of law that we review de novo. See United States v. Bahe, 128 F.3d 1440, 1441 (10th Cir. 1997). Mr. Castillo contends that the court violated his privilege to be free from the adverse testimony of his spouse because the court did not inform Mrs. Castillo that she could refuse to testify. It is unnecessary for us to consider Mr. Castillo's argument. During the pendency of his appeal, this court decided Bahe, in which "we recognize[d] an exception to the marital communications privilege for spousal testimony relating to the abuse of a minor child within the household." Id. at 1446. Because Mr. Castillo's case falls within the exception outlined by Bahe, Mrs. Castillo's testimony did not violate the privilege.

### III. Sufficiency of the Evidence

Mr. Castillo raises two different arguments that the evidence presented in this case is an insufficient basis for conviction. In evaluating arguments based on the sufficiency of evidence, we review the entire record de novo in the light most favorable to the government to determine whether a reasonable jury could find guilt beyond a reasonable doubt, based on all the evidence. See United States v. Norman T., 129 F.3d 1099, 1103 (10th Cir. 1997).

### A. Correlation Between the Testimony and the Indictment

Mr. Castillo first argues that the government presented no evidence at trial regarding the crimes charged in Counts III-VIII of the indictment. Those counts arose out of three acts of abuse, each of which gave rise to one count of sexual abuse and one count of sexual abuse of a minor. Counts III and IV arose from the defendant's penile abuse of N.C. "on or about July 1994." As to this act of abuse, N.C. testified that in the summer of 1994, the defendant undressed her during the night and rubbed his penis against her vagina. See Tr. Vol. IV, at 70-71. Counts V and VI arose from the defendant's digital abuse of N.C. "on or about June of 1994." As to this act of abuse, N.C. testified that close to the time of the penile abuse, her father touched her vagina with his hand. See Tr. Vol. IV at 72. Finally, Counts VII and VIII arose from the defendant's digital abuse of C.C. "on or about June 1994." C.C. testified that this act of

abuse occurred in the summer of 1994.  See Tr. Vol. IV at 82-83.  Dr. Julia Marie Bledsoe, a physician who examined C.C. in September of 1994, corroborated this testimony.  See Tr. Vol. IV at 138-39.  All of this testimony provided a reasonable juror with a sufficient basis to believe beyond a reasonable doubt that the acts of abuse occurred.

Although none of the testimony pinpoints the acts of abuse to the months specified in the indictment, when an indictment uses the terminology "on or about," proof of a date reasonably near to the specified date is sufficient.  See United States v. Leibowitz, 857 F.2d 373, 379 (7th Cir. 1988); see also United States v. Young, 862 F.2d 815, 818-19 (10th Cir. 1989).  The testimony in this case established that the abuse occurred reasonably near to June and July of 1994.

**B. The Fear Element**

The defendant also argues that his convictions on the four counts of sexual abuse under 18 U.S.C. § 2242 are all invalid because the government failed to introduce an element of that crime.  Section 2242 requires proof that the defendant "cause[d] another person to engage in a sexual act by threatening or placing that other person in fear."  18 U.S.C. § 2242(1).  According to the defendant, the prosecution admitted no evidence at trial of the victim's fear or the existence of a threat.

The definition of "fear," as used in 18 U.S.C. §2242(1), is very broad. See United States v. Gavin, 959 F.2d 788, 791 (9th Cir. 1992). The element is satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm. See United States v. Cherry, 938 F.2d 748, 755 (7th Cir. 1991). There were implicit threats of bodily harm in this case. When an older person attempts to molest a child, there is always a substantial risk that physical force will be used to ensure the child's compliance. See United States v. Reyes-Castro, 13 F.3d 377, 379 (10th Cir. 1993). A jury could infer, simply from the nature of the circumstances, that a male parent attempting to perform sexual acts with his children would place them in fear of bodily harm.

Furthermore, the victims' mother testified that the victims had witnessed the defendant physically abuse her on many occasions, see Tr. Vol. IV at 39, and that the defendant had physically abused N.C. A jury could infer from these facts that the sexual abuse of N.C. and C.C. was accomplished through fear of bodily harm. For these reasons, we find the evidence sufficient to support the verdict in this case.

## IV. The Lesser Included Offense Instruction

Counts I-IV charged defendant Castillo with two counts of sexual abuse under 18 U.S.C. § 2242(1) and two counts of sexual abuse of a minor under 18 U.S.C. § 2243(a). The defendant asked the court to instruct the jury that it

could convict him of the lesser included offense of abusive sexual contact under 18 U.S.C. § 2244 on each of Counts I-IV.  The district court refused to give the instruction, and we affirm that ruling.

Determining whether a defendant was entitled to a lesser included offense instruction is a question of law that we review de novo.  See United States v. Abeyta, 27 F.3d 470, 473 (10th Cir. 1994).  The Federal Rules of Criminal Procedure give a defendant the right to have the jury consider convicting him of a lesser included offense.  Rule 31(c) describes a lesser included offense as "an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c) (emphasis added).  Interpreting this language, the Supreme Court has said that:

> One offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense.  Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).

Schmuck v. United States, 489 U.S. 705, 716 (1989).

Here, the crimes that the defendant was charged with committing require the government to prove that a "sexual act" occurred.  18 U.S.C. §§ 2242, 2243.  By contrast, the offense of abusive sexual conduct, 18 U.S.C. § 2244, requires proof of "sexual contact."

We must determine, then, whether sexual contact under section 2244 is

- 23 -

"necessarily included" in every sexual act. The differences between a "sexual act" and "sexual contact" are twofold. First, the physical acts necessary for conviction are different. The government, however, concedes that the physical act required by sections 2242 and 2243 "necessarily includes" the physical act required under section 2244. The second difference is the mental state requirement. Sections 2242 and 2243, which prohibit sexual acts, require that the defendant "knowingly" committed the act. 18 U.S.C. §§ 2242, 2243. Section 2244, on the other hand, which prohibits sexual contact, requires "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of another person." 18 U.S.C. § 2246(3).[4]

Because section 2244 contains a specific intent element that sections 2242 and 2243 do not have, the crime of abusive sexual contact is not a lesser included offense of the crime of sexual abuse. See United States v. Torres, 937 F.2d 1469, 1477-78 (9th Cir. 1991); c.f. United States v. Hourihan, 66 F.3d 458, 465 (2d Cir. 1995) ("[S]exual contact requires something that an attempted sexual act

[4]Counts I-IV charged the defendant with the sexual act of penile sexual abuse, while the other counts charged him with the sexual act of digital sexual abuse. The definition of a "sexual act" of digital abuse does include the specific intent element found in section 2246(3). See 18 U.S.C. § 2246(2)(C). Thus, the district court gave an instruction on the lesser included offense of section 2244 on the counts involving digital sexual abuse. That ruling is not challenged on appeal and we do not now decide whether digital sexual contact is a lesser included offense of digital sexual abuse. The sole issue before us is whether penile sexual contact is a lesser included offense of penile sexual abuse.

does not."). We recognize that the Eighth Circuit has held the contrary, concluding that one would not be guilty of a "sexual act" under section 2243 without having the specific intent required by section 2244. See United States v. Demarrias, 876 F.2d 674, 676-77 (8th Cir. 1989). This reasoning, however, contradicts the principal that "[t]o be necessarily included in the offense charged, the lesser offense <u>must not only be part of the greater in fact, but it must be embraced within the legal definition</u> of the greater as a part thereof." Schmuck v. United States, 489 U.S. 705, 719 (1989) (citations and internal quotation marks omitted). Thus, the Supreme Court noted that its approach requires merely a "textual comparison of criminal statutes." Id. at 720. Because we find that the text of section 2244 requires an element that sections 2242 and 2243 do not, we affirm the district court.

## V. Sentencing

Mr. Castillo objects to the district court's refusal to grant a downward departure under the sentencing guidelines. At the sentencing hearing, Mr. Castillo argued that a downward departure was warranted in his case for several reasons, including the victims' wishes that he return to the family, his family responsibilities, and his stable employment record while enduring the hardships of life on the Navajo Reservation. The government, in reply, argues that this court has no jurisdiction to review the district court's refusal to depart

downward. We agree with the government.

We have often held that we have no jurisdiction to review a discretionary determination of a district court not to depart from the sentencing guidelines. See United States v. Rodriquez, 30 F.3d 1318, 1319 (10th Cir. 1994). In fact, we have previously said that we have no jurisdiction to review a district court's refusal to depart from the sentencing guidelines unless "it erroneously interpreted the Guidelines as depriving it of the power to depart based on the proffered circumstances," in which case our review would be plenary. United States v. Barrera-Barron, 996 F.2d 244, 245 (10th Cir. 1993) (emphasis added) (relying on United States v. Lowden, 900 F.2d 213, 217 (10th Cir. 1990). We think that this quoted language has created unnecessary confusion about the scope of review that we undertake in an appeal from a refusal to depart from the sentencing guidelines.[5] The statement suggests that before we can determine whether we have jurisdiction to review a district court's refusal to depart downward, we must first determine whether the court "erroneously interpreted the Guidelines" based on the defendant's particular circumstances; that is, we must always review the merits of whether the defendant's proffered circumstances are appropriate grounds for departure before we can conclude

_____

[5] The same analysis applies whether the defendant appeals the district court's refusal to depart downward or the government appeals the court's refusal to depart upward.

that we lack jurisdiction. No such jurisdictional peek is required, however, nor even authorized.

We clarify here that the courts of appeals cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant. Cf. United States v. Morrison, 46 F.3d 127, 130 (1st Cir. 1995); see also United States v. Fossett, 881 F.2d 976, 979 (11th Cir. 1989). This exception does not apply when a sentencing court concludes *under the defendant's particular circumstances* that it does not have the authority to depart.

An example will help illustrate the distinction. At the sentencing phase of his trial, a defendant argues that the court should depart downward because he has two young children to support and that they have no other relatives to care for them. The sentencing court considers the defendant's circumstances, but ultimately determines that they are not unusual enough to justify a departure. Accordingly, the court states that it has no authority to depart downward. The court's determination is discretionary, and we would have no jurisdiction to review the court's refusal to depart. If, however, the sentencing court does not consider the defendant's circumstances, *but rather* states that

family circumstances, as a matter of law, are never a basis for downward departure, we would have jurisdiction to review the court's legal conclusion.

Such an emphatic, bright-line rule is dictated by the Sentencing Reform Act. The Act provides, in relevant part, that a defendant may appeal his sentence "if the *sentence* — (1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) [was based on the sentencing court's upward departure]; or (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a) (emphasis added). We emphasize two points about this language. First, this statute lists the only areas over which Congress gave appellate courts the power to review sentencing decisions. Second, a refusal to depart from the guidelines is simply not part of the "sentence" imposed on the defendant as that term is used in the statute. See Morrison, 46 F.3d at 130. Thus, the refusal to depart is uniquely within the discretion of the district court. See 18 U.S.C. § 3553(b) (allowing but not requiring district courts to depart from guidelines if "the court finds that there exists an aggravating or mitigating circumstance . . . not adequately taken into consideration by the Sentencing Commission in formulating the guidelines"). The Sentencing Reform Act gives a defendant limited appellate review of sentencing decisions, but it gives him no right to appeal a district court's

refusal to depart downward.

We reach this conclusion not only from a reading of the Act, but also upon a reading of <u>Koon v. United States</u>, 116 S. Ct. 2035 (1996). The Supreme Court in <u>Koon</u> emphasized "that Congress did not intend, by establishing limited appellate review [in the Sentencing Reform Act], to vest in appellate courts wide-ranging authority over district court sentencing decisions." <u>Id.</u> at 2046. Rather, "except to the extent specifically directed by [section 3742], it is not the role of an appellate court to substitute its judgment for that of the sentencing court." <u>Id.</u> (citations and internal quotation marks omitted). The Sentencing Reform Act was "designed to preserve the concept that the discretion of a sentencing judge has a proper place in sentencing and should not be displaced by the discretion of an appellate court." <u>Id.</u> (citations and internal quotation marks omitted). So long as the defendant's base sentence is properly within the guideline range and there is no *upward* departure, the defendant has no right to appeal the court's refusal to depart downward. <u>See</u> <u>Koon</u>, 116 S. Ct. at 2046 ("[With respect to departures, section 3742] allows a defendant to appeal an upward departure and the Government to appeal a downward one.").

We only retain the power to review a refusal to depart under the rare exception noted above—where the sentencing court concludes that an entire class of circumstances never constitutes the basis for a downward

departure—because such a refusal to depart calls into serious question whether the sentence that the district court imposed was either "imposed in violation of the law" or "imposed as an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(1), (2). Where, because of a purely legal conclusion, a district court refuses even to consider whether a defendant's circumstances may support departure, the Sentencing Reform Act gives us the power to review. With each passing year, though, the likelihood of this rare exception arising becomes even more rare. The Supreme Court has made it clear that "the [Sentencing] Commission chose to prohibit consideration of only a few factors, and not otherwise to limit, as a categorical matter, the considerations which might bear upon the decision to depart." Koon, 116 S. Ct. at 2045. The prohibited factors are well known. See id. at 2044 (identifying race, sex, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship as the only prohibited factors). Thus, the district courts know that other factors may, depending upon the circumstances of the case, support a departure. See U.S.S.G. ch. 1, pt. A, 4(b) (1997).

In this case before us, the district court said at the conclusion of sentencing: "If there's any way that the folks up above can say I can depart, I will depart, but I don't see how I can do it." This statement indicates that the

court thought that it had no authority to depart on the grounds offered by the defendant. It is clear, though, that the district court knew it had authority to depart if the facts of the case had supported such a departure. The court considered the circumstances proffered by the defendant and determined, *in its discretion*, that a departure was not warranted. Because the district court understood that it has the discretion to depart, we find that we have no jurisdiction to review the district court's refusal to grant a downward departure in this case.

## Conclusion

We REMAND this case for the limited purpose of requiring the district court to clarify the reasoning underlying its evidentiary ruling under Rule 403. We DISMISS the defendant's appeal of the district court's refusal to grant a downward departure and AFFIRM the district court's decisions in all other respects.

No. 96-2251, United States v. Castillo

HOLLOWAY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion in its reasoning and disposition on most of the issues presented. However, I am unable to agree as to two portions of the opinion, the analysis of the due process challenge to Fed. R. Evid. 414 in Part I(A)(1) and the analysis and disposition of the downward departure issue in Part V.

First, the majority opinion makes an exhaustive analysis of the validity of Rule 414 under the Due Process Clause of the Fifth Amendment. To me, the opinion properly turns first to our recent holding in United States v. Enjady, 134 F.3d 1427 (10th Cir. 1998), that Fed. R. Evid. 413, which allows the admission of evidence of the defendant's commission of another offense or offenses of sexual assault in a criminal case charging an offense of sexual assault, does not on its face violate the due process rights of a defendant. Id. at 1433 ("Considering the safeguards of Rule 403, we conclude that Rule 413 is not unconstitutional on its face as a violation of the Due Process Clause."). Having cited this holding of our Enjady opinion on Rule 413, the majority opinion quite reasonably concludes that "[w]e now hold that Rule 414 does not on its face violate the Due Process Clause." Slip op. at 6.

In Rules 413 and 414, we are considering companion provisions adopted by the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322.

To me, it is enough to say that in light of our reasoning that Rule 413 (which applies more broadly to cases of "sexual assault") does not violate due process rights on its face, the parallel provision of Rule 414 applying to "child molestation" likewise is valid because no principled distinction may be drawn between the two Rules. I would thus avoid the extended analysis that follows discussing numerous Supreme Court decisions, the "lustful disposition" rule in state jurisprudence, and historical inferences. Our recent <u>Enjady</u> opinion adequately decides the facial due process issue before us, and I would go no further than to rely upon it. Thus I do not join the due process analysis of the majority opinion beyond its reliance on <u>Enjady</u> in disposing of the facial due process challenge to Rule 413.

<u>Second,</u> I respectfully dissent from the majority's reasoning and disposition as to the downward departure issue which Castillo presents. To me, the record remarks by the trial judge here make it very clear that he concluded he did not have jurisdiction to consider the downward departure request of Castillo. At the sentencing hearing, the judge said:

> THE COURT: I don't know the problems, Mr. Butcher, that -- you know, you don't really fit a downward departure under the guidelines. I've got to be -- <u>I'd much rather depart downward, frankly, but, you know, I've taken an oath; just like everybody else, I have to uphold it.</u> There are no circumstances here that I see that would allow me to, in good conscience, depart downward, and, you know, you run a risk when you go to trial, who did the jury believe, and so --.

Attachment G, p. 7 (emphasis added).

> Take me up on this sentencing.  If there's any way that the folks up above can say I can depart, I will depart, but I don't see how I can do it so --.

Id. at 10-11 (emphasis added).

We have held that where the trial court's remarks indicate that it believes it lacked the authority under the Guidelines to depart, that legal issue is reviewable by this court.  United States v. Haggerty, 4 F.3d 901, 903 (10th Cir. 1993).  We have made it plain, however, that unless the judge's language unambiguously states that he does not believe he has authority to downward depart, we will not review his decision.  United States v. Rodriguez, 30 F.3d 1318, 1319 (10th Cir. 1994).

Here several points make plain the judge's conclusion that he lacked authority to depart downward.  He said he would "much rather depart downward," but that he had "taken an oath . . .."  Attachment G at 7.  Then, he encouraged an appeal, saying, "Take me up on this sentencing."  Id. at 10.  Last, he added: "If there's any way that the folks up above can say I can depart, I will depart."  Id. By the time of these remarks in 1996, the judge undoubtedly knew that no appeal would lie unless he was stating his belief of a lack of authority to depart, not a discretionary decision not to depart.  Thus his suggestion of an appeal makes his views plain.

Accordingly, I respectfully dissent from the dismissal of the defendant's appeal of the denial of a downward departure. I otherwise concur in part and dissent in part as to the majority opinion, as explained above.