FILED
United States Court of Appeals
Tenth Circuit

December 1, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MARIO CASAS-TAPIA,

      Defendant-Appellant.

No.11-1198
(D.C. No. 1:10-CR-00292-WYD-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **MURPHY** and **MATHESON**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

This is a direct criminal appeal after a plea of guilty to one count of illegal reentry by a deported alien subsequent to an aggravated felony conviction, in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 8 U.S.C. § 1326(a) and (b)(2). The sole issue on appeal is whether the district court failed to recognize the scope of its legal authority to apply a downward departure for cultural assimilation. Because we conclude that the district court's denial was discretionary, we lack jurisdiction and dismiss the appeal.

I

Mario Casas-Tapia is a citizen of Mexico who lawfully immigrated to the United States with his parents when he was six months old. He was admitted to the United States as a lawful permanent resident, but he lost that status following his criminal convictions while a teenager. In 1998, at the age of eighteen, he pled guilty to misdemeanor assault and first-degree criminal trespass, an aggravated felony, and was deported. His immediate family remained in the United States. After living in Mexico for five years, Casas-Tapia returned illegally and resettled near his family. Since returning, he has been convicted of several misdemeanor and felony offenses.

In 2010, he pled guilty to unlawful reentry of a removed alien subsequent to an aggravated felony conviction. In the presentence report, the probation officer calculated the sentencing range at thirty to thirty-seven months and recommended a sentence at the high end of the range based on Casas-Tapia's criminal history. Casas-Tapia moved for a below-guidelines sentence based on cultural assimilation. In his motion for a downward departure or variance, Casas-

Tapia argued that he returned to the United States because of his cultural and familial ties, not to find work. He also argued that a downward departure would not increase the risk to the public because he will be deported upon release.

At the sentencing hearing, after detailed argument from Casas-Tapia's attorney on cultural assimilation, the district court made the following observations:

> This is a difficult case for the Court. While I understand and appreciate [defense counsel's] argument, I also am faced with a situation where it isn't just that Mr. Casas-Tapia returned to the United States illegally, but he has these ongoing criminal encounters and criminal cases.
> . . .
> So if he had returned in 2004 or 5, whenever he came back, and he had a -- either no criminal history or a minuscule criminal record, that would be one thing. But we have him accumulating 11 criminal history points . . .
> . . .
> And this is a regrettable situation, but at some level, Mr. Casas-Tapia has to accept responsibility for not doing these things that continue to violate the law.
> . . .
> So for all of those reasons, I deny the request for a downward departure, because <u>I think he doesn't meet the technical requirements of cultural assimilation</u>, for the reasons previously noted. He's come back to this country. He's continued to commit crimes. <u>I think that is an impediment to me granting a downward departure</u>.
> . . .
> The Court finds no reason to depart from the advisory guideline range, and will impose a sentence in that range.

ROA, Vol. 2, Pt. 2, at 53-56 (emphasis added).

The court imposed a thirty-month sentence. This appeal followed.

II

Casas-Tapia argues that the district court erred in denying his request for a downward departure for cultural assimilation based upon his criminal history. He contends that the district court made statements that "affirmatively suggest that the court believed that it lacked" legal authority to grant the downward departure. Aplt. Reply Br. at 5. Because the court thought Casas-Tapia's criminal history "constrained" it not to apply the downward departure, Casas-Tapia argues that the court erroneously interpreted the law and thus abused its discretion.

In 2010, the United States Sentencing Commission amended the sentencing guidelines to "promote uniform consideration of cultural assimilation by courts" in illegal reentry cases. U.S. Sentencing Guidelines Manual app. C supp. at 351-52 (2010). By recognizing that "[t]here may be cases in which a downward departure may be appropriate on the basis of cultural assimilation," U.S.S.G. § 2L1.2 cmt. n.8, the Commission adopted the prudential practice of some circuits—although not this one—of considering a defendant's cultural ties to the United States at the sentencing phase. Compare United States v. Rodriguez-Montelongo, 263 F.3d 429, 433 (5th Cir. 2001) (holding that "cultural assimilation is a permissible basis for downward departure"), and United States v. Lipman, 133 F.3d 726, 730 (9th Cir. 1998) (holding that "a sentencing court has authority . . . to consider evidence of cultural assimilation"), with United States v.

4

Galarza-Payan, 441 F.3d 885, 889 (10th Cir. 2006) (declining to "address [the] debate" of whether cultural assimilation can be a specific ground for departure). An application note to the guideline states that a departure for cultural assimilation

> should be considered only in cases where (A) the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.
>
> In determining whether such a departure is appropriate, the court should consider, among other things, (1) the age in childhood at which the defendant began residing continuously in the United States, (2) whether and for how long the defendant attended school in the United States, (3) the duration of the defendant's continued residence in the United States, (4) the duration of the defendant's presence outside the United States, (5) the nature and extent of the defendant's familial and cultural ties inside the United States, and the nature and extent of such ties outside the United States, (6) the seriousness of the defendant's criminal history, and (7) whether the defendant engaged in additional criminal activity after illegally reentering the United States.

U.S.S.G. § 2L1.2 cmt. n.8. Here, the court concluded that Casas-Tapia's criminal history made it more likely that he would be a risk to the public, which precluded application of the departure. See ROA, Vol. 2, Pt. 2, at 31-32 ("But in looking at the technical requirements of 2L1.2, and specifically, application note 8, it's the C, such a departure is not likely to increase the risk to the public from further

5

crimes of the defendant. The problem is, he's continued to commit crimes. And so I don't understand how I can find that cultural assimilation has been met for purposes of the guideline." (citing U.S.S.G. § 2L1.2 cmt. n.8)).

We have consistently held that we lack jurisdiction to review a sentencing court's discretionary decision not to depart from the Sentencing Guidelines. See, e.g., United States v. Sierra-Castillo, 405 F.3d 932, 936 (10th Cir. 2005); United States v. Jeppeson, 333 F.3d 1180, 1184 (10th Cir. 2003); United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999). This is so because appellate courts are restricted to reviewing sentences that (1) are imposed in violation of law, (2) are imposed as a result of an incorrect application of the Sentencing Guidelines, (3) impose a greater sentence than the maximum applicable guideline range, or, (4) in the case of offenses not mentioned in the guidelines, are plainly unreasonable. 18 U.S.C. § 3742(a). We may also exercise jurisdiction "in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." United States v. Castillo, 140 F.3d 874, 887 (10th Cir. 1998) (emphasis added). "This exception does not apply when a sentencing court concludes under the defendant's particular circumstances that it does not have the authority to depart." Id. (emphasis in original).

Because "[a] district court is presumed to understand that it has discretion to downwardly depart unless the court unambiguously states that it lacks such

6

discretion," Sierra-Castillo, 405 F.3d at 936, we look to the court's stated reason for declining to depart to determine whether we have jurisdiction. If the court's statement was ambiguous, we presume that "the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart." Fortier, 180 F.3d at 1231. As we have stated,

> we no longer are willing to assume that a judge's ambiguous language means that the judge erroneously concluded that he or she lacked authority to downward depart. . . . Accordingly, unless the judge's language unambiguously states that the judge does not believe he has authority to downward depart, we will not review his decision.

United States v. Rodriguez, 30 F.3d 1318, 1319 (10th Cir. 1994).

It is clear that the district court considered the factors for a downward departure for cultural assimilation. While the court's statements indicate it was aware of the scope of its discretion, the court also recognized that it was "constrained not to downward depart" based on Casas-Tapia's criminal history. ROA, Vol. 2, Pt. 2, at 36. The court ambiguously framed Casas-Tapia's criminal history as a "bar" or "impediment" to granting the departure. The court could have meant that Casas-Tapia's prior convictions were an impediment to the court concluding that the departure was "not likely to increase the risk to the public from further crimes of the defendant," which is a condition precedent to the downward departure for cultural assimilation. See U.S.S.G. § 2L1.2 cmt. n.8. We could also read the court's statement to suggest that the court thought it

7

lacked authority to grant a cultural assimilation departure when an alien is convicted of a crime, deported, later returns to the United States, and continues to commit crimes. In light of this ambiguity, we must presume that "the judge was aware of his . . . legal authority to depart but chose instead, in an exercise of discretion, not to depart." See Fortier, 180 F.3d at 1231. At no point did the court unambiguously state that it was without legal authority to depart based on cultural assimilation whenever a defendant commits crimes after returning to the United States.

### III

We have no statutory authority under 18 U.S.C. § 3742(a) to review a denial of a request for downward departure where the district court's statements can be read to indicate that it believed it did have discretion to depart downward, but exercised its discretion to deny the request. We DISMISS the appeal for lack of jurisdiction.

Entered for the Court

Mary Beck Briscoe
Chief Judge

8