**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 9, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PAULA AMBER CHISHOLM,

    Defendant - Appellant.

No. 24-7007
(D.C. No. 6:21-CR-00194-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, Chief Judge, **CARSON**, and **ROSSMAN**, Circuit Judges.
_____

When the government lists a specific date in an indictment, it must produce evidence which tends to show that the defendant committed the charged offense on a date "reasonably near" the date listed in the indictment. So long as the government presents enough evidence reasonably consistent with the indictment's time frame, it provides sufficient evidence for conviction. "Reasonably near" does not mean exact.

Here, a grand jury indicted Defendant Paula Amber Chisholm for conduct beginning "on or about" November 20, 2019, and ending December 5, 2019. Defendant contends the jury lacked sufficient evidence to convict her for conduct

_____

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

occurring within that range.  We disagree.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

K.C., a minor, lived in a house in McAlester, Oklahoma, within the Choctaw Nation and thus within Indian Country.  K.C. lived with Defendant, his grandmother, his aunt Emily, Emily's four children, K.C.'s sister, an adult male cousin, and that adult male cousin's girlfriend.  For a time, K.C.'s grandfather lived there too.  Defendant's grandmother owned the house in which they all lived.  Defendant is a member of the Muscogee Creek Nation—a federally recognized Indian tribe.

K.C.'s grandmother became his legal guardian after his mother died.  But Defendant watched the children in the home, including K.C.

In 2019, the children had a break from school over the Thanksgiving holiday from November 23, 2019 through December 1, 2019.  K.C. skipped school on December 2 because of a stomach ache.  When he returned to school on December 3, the school counselor, Ginger Cornish, suspected someone had abused K.C.  She noticed he did not have much hair and did not look very healthy.  His stomach was distended.  He appeared small, thin, listless, and lethargic.  K.C. did not respond to Cornish and had bodily injuries, including bruising on his ears, a festering wound on his leg, and marks on his back.  The school called an ambulance and officials met Defendant and K.C.'s grandmother at the hospital.  Cornish knew that the Oklahoma Department of Human Services (DHS) had intervened in March and August 2019.  Defendant had agreed to the state weighing and monitoring K.C.

2

Nurse practitioner Cynthia Sanford examined K.C. at the hospital. She previously evaluated K.C. in September 2019 after the earlier DHS referrals. Sanford performed a "head-to-toe evaluation" of K.C. The photographs from this examination revealed: (1) injuries to four of K.C.'s toes, including abrasions and missing tissue on two of them; (2) an abrasion on the top of a foot; (3) scarring on the top of a foot reflecting well-healed scars to injuries from a previous manner; (4) scarring at the head of K.C.'s right fibula that reflected another well-healed old injury; (5) scarring on the front of both of his legs from old injuries that had healed; (6) a partially healed injury on the front of one of his legs; (7) pink or red abrasions on his knees; (8) well-healed scars on his right knee; (9) scarring up next to his underwear on the right thigh; (10) scarring on the front side of his torso, including a long linear scar; (11) scarring to the right of the umbilicus or the belly button; (12) scarring just under his ribs, right upper quadrant and left lower quadrant; (13) scarring on the lower rib cage; (14) scarring just right above the left nipple that extends down to the left side; (15) a linear abrasion, a little round abrasion right next to it, and some contusion or bruising around that abrasion in the area of his left nipple; (16) multiple scratches or abrasions in the area of his left anterior chest; (17) a long linear abrasion that crosses his chest; (18) a brownish-yellow "healing contusion" on the inside of his upper arm; (19) a contusion or a bruise to the cartilage of the upper ear; (20) a "glial injury" to the left ear, where the ear is pulled and it pulls the skin away from the bone and produces a bruise under the skin; (21) a scrape or an abrasion on the left forehead, and a small scratch right below it; (22) an old

injury on the back of his knee; (23) scarring on the back of his left leg, some of which was well-healed and some of which reflected a new injury; (24) an oval-shaped contusion with some purple, some red, and some green discoloration indicating a healing contusion on his left hip; and (25) a different contusion on his left hip, above the hip bone and extending into the soft tissue.

In addition to talking to the nurse practitioner at the hospital, K.C. also spoke with social worker Michelle Swimmer. Swimmer described K.C. as terrified. She noticed marks all over his ears, his head, his arms, his wrists, his legs, and his feet. He told her that "Aunt Paula" had been hurting him.

Defendant denied hurting K.C. The hospital discharged K.C. into his father's care and custody the next day.

Following McGirt v. Oklahoma, 591 U.S. 894 (2020), the Federal Bureau of Investigation filed a criminal complaint that charged Defendant with one count of child abuse in Indian country, in violation of 18 U.S.C. § 1153. A grand jury later indicted Defendant on one count of child abuse and one count of child neglect violating 18 U.S.C. § 1153. The indictment alleged that Defendant abused K.C. "[b]eginning on or about November 20, 2019 and continuing until December 5, 2019 . . . by striking, kicking, dragging, pinching, and restraining" him.

The case proceeded to a jury trial. The jury convicted Defendant of child abuse but acquitted her of child neglect. The district court sentenced Defendant to forty-eight months' imprisonment followed by twenty-four months' supervised release.

4

II.

On appeal, Defendant argues we should reverse her conviction and remand with instructions to grant a judgment of acquittal because the government presented no evidence from which a rational jury could conclude Defendant injured K.C. reasonably near the time period alleged in the indictment. "We review de novo the sufficiency of evidence." United States v. Murry, 31 F.4th 1274, 1296 (10th Cir. 2022) (citing United States v. Sharp, 749 F.3d 1267, 1275 (10th Cir. 2014)). "We ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting United States v. Serrato, 742 F.3d 461, 472 (10th Cir. 2014)).

Here, the indictment alleged that Defendant physically abused K.C. beginning "on or about" November 20, 2019, and ending December 5, 2019. Defendant argues the government presented no evidence that Defendant inflicted the injuries K.C. suffered reasonably close to the Thanksgiving school break in 2019.[1]

---

[1] At oral argument, Defendant argued that in addition to appealing the sufficiency of the evidence as to the time period listed in the indictment, she also challenged the sufficiency of the evidence that she was K.C.'s abuser. Defendant does not raise this issue in her opening brief. And "the omission of an issue in an opening brief generally forfeits appellate consideration of that issue." Bronson v. Swensen, 500 F.3d 1099, 1104 (10th Cir. 2007) (citing Wyoming v. Livingston, 443 F.3d 1211, 1216 (10th Cir. 2006)). Even if we reviewed the sufficiency of the evidence, any rational trier of fact could have concluded that Defendant abused K.C. K.C. testified at trial that Defendant hit him everywhere and that Defendant scared him. Indeed, K.C. testified that Defendant was the person who punched and injured him the day he reported his injuries to the school.

We hold the government to the indictment's language indicating when the alleged crime took place.  United States v. Ellis, 868 F.3d 1155, 1179 (10th Cir. 2017).  For that reason, "[w]hen an indictment lists a specific date, the government must produce 'some evidence which tends to show that the defendant committed the charged offense on "a date reasonably near to the specified date."'"  Id. (quoting United States v. Charley, 189 F.3d 1251, 1273 (10th Cir. 1999)).  "Reasonably near" does not mean exact.  So, if the prosecution proves a defendant committed an offense "within a few weeks of the date," we deem the proof sufficient to hold a defendant responsible for the charge.  Kokotan v. United States, 408 F.2d 1134, 1138 (10th Cir. 1969) (citing Ledbetter v. United States, 170 U.S. 606, 612–13 (1898)).  We have sustained convictions based on more generic time evidence if the government presented evidence reasonably consistent with the indictment's time frame.  See United States v. Castillo, 140 F.3d 874, 885 (10th Cir. 1998) (upholding a conviction against a defendant who allegedly committed a crime in June based on victim's testimony the crime occurred "in the summer"); Ellis, 868 F.3d at 1179 (sustaining a drug conviction because "the government produced evidence of Ellis's maintaining 921 Haskell as a drug premises during the month before the date charged in the indictment.").

Viewing the evidence in the light most favorable to the prosecution, we conclude any rational trier of fact could have found beyond a reasonable doubt that Defendant physically abused K.C. beginning "on or about" November 20, 2019, and ending December 5, 2019.  Here, the evidence shows that the nurse's examination in

6

September 2019 showed no physical abuse signs, nor did the photographs taken of K.C. in October and November. Only after K.C. returned to school after Thanksgiving break did he show physical-injury signs. After Thanksgiving break, K.C. said that Defendant abused him. The evidence additionally showed fresh bruises and stomach pains after Thanksgiving break, apparently from Defendant punching him in the stomach.

Defendant objects to this evidence. First, that Nurse Sanford did not narrow down when his bruising and other injuries occurred. But the government's complete case established a timeline: no injuries before Thanksgiving break, many injuries after. Second, that K.C. gave non-specific testimony in which he said that Defendant hit him with a belt while he lived with her, a period that exceeds even a few weeks' leeway around the 2019 Thanksgiving school break. Defendant argues K.C.'s sister gave the same non-specific testimony: accusing Defendant of pushing laundry baskets down on K.C. while he lived with her. But, taken as a whole, the government's evidence suggests an abuse timeline that included the indictment dates. K.C. testified that Defendant punched him in the stomach and that's why he felt bad when he returned to school. And as to K.C.'s sister's testimony, Defendant admitted laundry baskets fell on K.C. during Thanksgiving break.[2]

---

[2] Because the evidence supports finding abuse during the period in the indictment, we need not reach the government's additional argument that September 25—the last day Nurse Sanford saw K.C. without injuries—is itself sufficiently close to November 20 to support affirmance.

Defendant cites our decision in United States v. Simpson, 845 F.3d 1039 (10th Cir. 2017), for the proposition that evidence showing a defendant committing a crime within a two-month period before her arrest was insufficient to sustain a conviction for a crime alleged to have occurred "on or about" a particular date. Simpson is inapposite. That case dealt with the propriety of jury instructions used during a gun possession trial. Id. The law had recently changed on constructive possession to require an intent to use the guns constructively possessed during the period the indictment alleged, an element the jury instructions omitted. Id. at 1060. The government argued there was nevertheless evidence to support a conviction because a police officer testified that "Simpson had admittedly shown his wife how to fire the handguns in the two months prior to the arrest." Id. at 1062. We reversed because that evidence did not address Simpson's intent to use the guns any closer to his arrest as the new constructive possession law required. Id. The issue with the government's case was not timing, but rather lack of the intent the law required.

Thus, the evidence was sufficient for a jury to conclude that Defendant physically abused K.C. beginning "on or about" November 20, 2019, and ending December 5, 2019.

AFFIRMED.

Entered for the Court

Joel M. Carson III
Circuit Judge

8