**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 14 2001**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MICHAEL SEAN BROWNING,

      Defendant - Appellant.

No. 00-8055

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 99-CR-140-B)**

---

Michael Reese, Wiederspahn & Reese, P.C., Cheyenne, Wyoming, for Defendant-Appellant.

Lisa E. Leschuck, Assistant United States Attorney (David D. Freudenthal, United States Attorney, with her on the brief), Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **BRISCOE**, **PORFILIO**, and **LUCERO**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

      Defendant-appellant Michael Browning entered a conditional guilty plea to

a charge of being a felon in possession of a firearm in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2). On appeal, Browning challenges the denial of his two pretrial motions and several aspects of his sentence. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.

## I

On August 9, 1999, a 911 dispatcher in Wyoming received a phone call from a woman claiming to have just been assaulted and to have just exited the vehicle in which the assault took place. The caller gave her name (Deanna Pine), specified her location (a pay phone at Mule Creek Junction), described the vehicle (a tan Blazer with Arizona license plates), and identified her alleged assailant (Michael Browning). The dispatcher obtained the number of the pay phone and called back two or three times to speak further with Pine. From the subsequent calls, the dispatcher learned the caller's date of birth, details of the alleged assault, and that Browning had driven off with the caller's property.

Based on that information Deputy Darrell Frye was dispatched to find Browning's vehicle. Frye located the vehicle and began a pursuit with his police lights on. During the pursuit, the officer lost sight of Browning's vehicle for a few seconds. Eventually, the officer forced Browning to stop.

While stopped, Browning confirmed that he had been in an altercation with Pine and that he had some of her "stuff" in his car. (III R. at 25–26.) On his own initiative, Browning unloaded Pine's belongings, including an open binoculars

case that contained a vial with drug residue. After receiving Browning's consent to a search of his vehicle, officers discovered a set of triple-beam scales, which, according to the government, are frequently used to weigh drugs. Browning was then arrested and advised of his Miranda rights. The total time from the initial stop to Browning's arrest was approximately twenty minutes.

Based on statements Browning made the day after his arrest, Wyoming police officers walked along the shoulder of the highway near where Browning was pulled over and found a gun. Browning's fingerprints were found on the gun.

At his request, Browning met with DEA agents on August 18, 1999. Before the start of the meeting, Browning again was advised of his Miranda rights. The DEA agents clearly stated that they were promising nothing to Browning. (See, e.g., I R. Doc. 31 Ex. 1 at 4 ("I'm telling you right now there is absolutely no promise from us what so ever [sic] to do anything for you.").) During the interview, Browning stated that the gun found by police was his and that he had possession of it as a result of an altercation in Phoenix. He also indicated that he left Arizona and went to South Dakota with Pine to protect her while she "cooked" methamphetamine. (Id. at 28–29.)

Browning pleaded guilty to Wyoming state charges for possession of methamphetamine and aiding and abetting an unlawful clandestine laboratory

operation.[1]  He also was charged in federal court with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Browning filed two motions to dismiss the federal charges, arguing:  (1) that the indictment should be dismissed because the phone call from Pine did not provide probable cause to stop his car and (2) that use of the statements he made to the DEA agents violated Fed. R. Crim. P. 11(e)(6), which renders inadmissible statements made during plea negotiations.  The district court denied both of these motions.  Browning then entered into a conditional plea agreement, preserving the issues raised in his motions for appellate review.

At sentencing, the district court determined that Browning's base offense level should be twenty because he had a prior controlled substance conviction.  See U.S.S.G. §§ 2K2.1(a)(4)(A), 4B1.2 (defining terms).  The district judge increased Browning's base offense level by two levels because the firearm Browning possessed was stolen, see id. § 2K2.1(b)(4), and by four levels because Browning possessed the firearm in connection with another felony offense (i.e., providing protection to Pine while she was manufacturing methamphetamine), see id. § 2K2.1(b)(5).

---

[1]  Browning's Wyoming convictions are currently being appealed to the Wyoming Supreme Court.

## II

We review the denial of a motion to dismiss the indictment for an abuse of discretion. See United States v. Giles, 213 F.3d 1247, 1248–49 (10th Cir. 2000). In addressing the threshold issue of evidence suppression, the trial court's factual findings are reviewed for clear error, viewing the evidence in the light most favorable to the government. United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." Id. However, the ultimate determination of Fourth Amendment reasonableness is reviewed de novo. Id.

### A. Legality of Browning's Arrest

Relying on Florida v. J. L., 529 U.S. 266 (2000), Browning argues that the 911 call from Pine did not provide an adequate basis for stopping him. In J. L., police received an anonymous call reporting that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. Id. at 268. Police went to the bus stop and saw three black males, one of whom, the defendant, was wearing a plaid shirt. Id. Apart from the tip, the officers had no reason to suspect J. L. of illegal conduct. The police did not see a firearm or observe any unusual movements. Id. One of the officers frisked J. L. and seized a gun from his pocket. Id. The Court held that the defendant's Fourth

Amendment rights were violated because he was stopped based solely on information from "a call made from an unknown location by an unknown caller." Id. at 270. The anonymous tip leading to the arrest of J. L. lacked the necessary indicia of reliability. Id. at 274.

The circumstances of Browning's arrest are vastly different. Pine identified herself by giving her name, birth date, and location; gave a telephone number that allowed the dispatcher to call her back; indicated that she had been in the car with Browning; and stated that she had been the victim of the alleged crimes leading to the stop. In J. L., "[a]ll the police had to go on . . . was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J. L." Id. at 271. Here, by contrast, the police had a caller who explained how she knew about the wrongdoing and provided a basis showing she had "inside information." That information supplied the police with reasonable suspicion justifying Browning's initial stop pursuant to Terry v. Ohio, 392 U.S. 1, 30 (1968).

Browning also complains about the length of the stop. However, viewing the facts in the light most favorable to the government, we do not see any excessiveness in the duration of the stop. During the twenty- to thirty-minute stop, Browning moved his car to a safer location, voluntarily pulled out Pine's

belongings, consented to a search of his car, and presumably answered questions throughout. Given that Browning had been accused of assault and theft, the twenty- to thirty-minute stop, including unpacking and searching a vehicle, was neither unreasonable nor beyond the scope of the stop. Consequently, the district court properly denied Browning's motion to dismiss the indictment.

## B. Admissibility of Browning's Statements to DEA Agents

Browning claims that his statements to DEA agents are inadmissible under Fed. R. Crim. P. 11(e)(6)(D), which prohibits admission of "any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty." We have not previously reviewed a similar claim. Other courts of appeal analyze alleged Fed. R. Crim. P. 11(e)(6) violations somewhat inconsistently. Compare United States v. Young, 223 F.3d 905, 908 (8th Cir. 2000), cert. denied, 121 S. Ct. 1133 (2001) ("As a mixed question of law and fact, we ordinarily review de novo a district court's determination that a statement was given in the course of plea negotiations." (emphasis added)), with United States v. Sitton, 968 F.2d 947, 956 (9th Cir. 1992) ("The district court's determination of whether the parties were engaged in plea discussions is a factual finding reviewed for clear error." (emphasis added)). We need not decide the precise standard of review for this claim because Browning's argument would fail regardless of the standard employed.

To begin with, Browning does not fall within the plain language of the rule because he was not speaking with "an attorney for the government." Fed. R. Crim. P. 11(e)(6)(D). Seeking to avoid the rule's plain language, Browning cites a Ninth Circuit case for the proposition that the rule applies where a "'defendant exhibits a subjective belief that he is negotiating a plea.'" (Appellant's Br. at 17 (citing Sitton, 968 F.2d at 957).) Browning misreads Sitton, which holds that Rule 11(e)(6) extends "only to discussions with a prosecutor rather than with law enforcement agents." Id. Sitton's discussion about reasonable subjective belief is an additional requirement for invoking Rule 11(e)(6). See id. ("In addition, conversations with government agents do not constitute plea discussions unless the defendant exhibits a subjective belief that he is negotiating a plea, and that belief is reasonable under the circumstances." (emphasis added) (citation omitted)).

The Eighth Circuit has extended the literal language of Rule 11(e)(6) to cover plea discussions with law enforcement officials "with express authority from a government attorney" to conduct plea negotiations. United States v. Lawrence, 952 F.2d 1034, 1037 (8th Cir. 1992). That construction does not help Browning because he points to no evidence that the DEA agents with whom he spoke had express authority to conduct plea negotiations or that they represented they had such authority.

**III**

Browning claims the district court made several errors in sentencing. "We review for clear error the district court's factual findings regarding sentencing and review de novo its legal interpretation of the Guidelines." United States v. Maldonado-Acosta, 210 F.3d 1182, 1183 (10th Cir. 2000).

### A. Prior Felony Conviction

U.S.S.G. § 2K2.1(a)(4)(A) provides for a base offense level of twenty if "the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense." The district court utilized Browning's Wyoming state conviction for aiding and abetting an unlawful clandestine laboratory operation to arrive at this offense level. Browning argues that "the state conviction arose out of the same offense/conduct" (Appellant's Br. at 21) as his federal charge for felon in possession; thus the state charge was not a prior conviction as required by § 2K2.1(a)(4)(A).

Browning's argument has some appeal because the firearm was found the day after he was arrested on the state charges and was obviously dropped from his car just before he was arrested. It would thus seem that Browning's possession of the firearm was included in the conduct forming the basis for his state charges. However, Browning's admissions during his meeting with DEA agents undercut his argument. At that meeting, he admitted to getting the gun in Arizona before

he entered Wyoming and before he began protecting Pine while she manufactured methamphetamine.

These facts are analogous to those in United States v. Banashefski, 928 F.2d 349, 350–52 (10th Cir. 1991). In that case the defendant was convicted in state court of possession of a stolen vehicle and then charged in federal court as a felon in possession of a firearm. Because there was evidence that the defendant possessed the firearm before being seen in possession of the stolen car, we held the violation of the federal weapons possession statute "involved separate conduct within the meaning of [U.S.S.G.] § 4A1.2—conduct which was not part of the 'instant offense.'" Id. at 352. Browning's admission that he possessed a firearm prior to entering Wyoming demonstrates this was a "separable instance of conduct" from the criminal acts leading to his Wyoming charges. Id. at 349; cf. United States v. Butler, 966 F.2d 559, 564 (10th Cir. 1992) ("Neither offense is dependent upon conduct associated with the other and neither shares a common element of proof, thus the relevant conduct underlying those convictions is severable . . . .").

## B. Enhancement for Controlled Substance Violation

The district court determined that Browning's Wyoming conviction constituted a "controlled substance offense" pursuant to U.S.S.G. § 2K2.1(a)(4)(A). "Controlled substance offense" is defined as "an offense under

-10-

federal or state law . . . that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). The application notes to § 4B1.2(b) further clarify that "controlled substance offense" includes "[u]nlawfully possessing a listed chemical with intent to manufacture a controlled substance," "[u]nlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance," and "[m]aintaining any place for the purpose of facilitating a drug offense." U.S.S.G. § 4B1.2(b), cmt. n.1. With this guidance, we have no doubt that Browning's Wyoming conviction for aiding and abetting a lab manufacturing methamphetamine constitutes a "controlled substance offense."

### C. Use of a Firearm in Connection with Another Offense

U.S.S.G. § 2K2.1(b)(5) provides for a four-level increase in offense level if "the defendant used or possessed any firearm . . . in connection with another felony offense." Browning challenges the application of U.S.S.G. § 2K2.1(b)(5) on two bases: (1) he did not possess the firearm "in connection with" another felony offense and (2) application of that section constitutes double counting of the Wyoming state conviction because it was used to enhance his sentence under both U.S.S.G. § 2K2.1(a)(4)(A), as discussed above, and under U.S.S.G. § 2K2.1(b)(5).

As to Browning's first point, "we have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate." United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998). Further "[a] weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under § 2K2.1(b)(5)." Id. The evidence cited by the government indicates that the firearm was used in connection with another felony offense: Browning admitted that he provided security for Pine while she manufactured methamphetamine. This admission is sufficient to support an enhancement under § 2K2.1(b)(5).

This Circuit has not considered whether using the same felony under both U.S.S.G. §§ 2K2.1(a)(4)(A) and 2K2.1(b)(5) to enhance a sentence constitutes double counting. However, under our established jurisprudence for evaluating double counting claims under the Sentencing Guidelines, Browning's claim must fail.

We summarized the general standard governing an allegation of double counting in United States v. Rucker, 178 F.3d 1369, 1371 (10th Cir. 1999):

> This court has held that "[i]mpermissible double counting or impermissible cumulative sentencing [under the Guidelines] occurs when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." United States v. Flinn, 18 F.3d 826, 829 (10th Cir. 1994).

-12-

Importantly, the last three conditions are stated as a conjunctive requirement; that is, all three must be met for the use of separate enhancements to constitute impermissible double counting.

A successful double counting claim must demonstrate that the two enhancements <u>necessarily</u> overlap in every conceivable instance, not just that they overlap often. <u>See</u> <u>id.</u> at 1373 (rejecting a double counting claim where the challenged enhancements overlap "nearly every time," but where such overlap was "not always the case"). Looking at the enhancements at issue, the § 2K2.1(b)(5) enhancement for use of a weapon in connection with another felony offense does not necessarily overlap with the § 2K2.1(a)(4) enhancement for a prior conviction of a controlled substance offense: the § 2K2.1(b)(5) felony need not be a prior "controlled substance offense" as is required under § 2K2.1(a)(4).

### D. Downward Departure

The district court denied Browning's request for a downward departure based on Browning's difficult childhood. As a general matter, U.S.S.G. § 5H1.12 prohibits downward departures for "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing." Browning seeks to avoid application of § 5H1.12 by citing a case granting a downward departure to a defendant who had suffered extreme psychological and physical abuse as a child. <u>See</u> <u>United States v. Ayers</u>, 971 F. Supp. 1197 (N.D. Ill. 1997). <u>Ayers</u> persuasively distinguishes "exceptionally cruel . . . psychological and emotional

abuse" constituting "a form of sadistic torture" from the generalized lack of guidance or neglect that § 5H1.12 prohibits as a basis for departure. Id. at 1200–01; see also United States v. Rivera, 192 F.3d 81, 84–85 (2d Cir. 1999) (noting that several circuits have "held that a downward departure may be appropriate in cases of extreme childhood abuse" and citing cases).

Despite the analytical soundness of Ayers, Rivera, and other similar cases, we do not have jurisdiction to apply them to Browning's claim. Our review of a sentencing court's refusal to grant a downward departure is narrow.

> [C]ourts of appeals cannot exercise jurisdiction to review a sentencing court's refusal to depart from the sentencing guidelines except in the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant. . . . This exception does not apply when a sentencing court concludes under the defendant's particular circumstances that it does not have the authority to depart.

United States v. Castillo, 140 F.3d 874, 887 (10th Cir. 1998) (citations omitted). The district court's statement that it lacks authority to grant the requested downward departure must be unambiguous. See United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999). When review is proper, we examine the sentencing decision de novo. See Castillo, 140 F.3d at 887.

Browning's counsel failed to address the threshold question of whether this Court has jurisdiction to review the refusal to depart. The government points to the crucial portion of the district judge's comments during Browning's

-14-

sentencing: "It's really a long record and pretty serious. On that account, there's no way I could lawfully depart downward in this case. The Tenth Circuit opinions plain just don't permit it, and I don't think there's any—any way that would hold up by which I could . . . ." (V R. at 52.) The district judge's use of the word "lawfully" and his reference to "Tenth Circuit opinions" seem to indicate that he made "a legal decision that [he] had no authority to depart," which is the type of decision over which we have jurisdiction. Fortier, 180 F.3d at 1231. Nevertheless, our prior precedent forecloses review. In Castillo, we held the following statement unreviewable: "If there's any way that the folks up above can say I can depart, I will depart, but I don't see how I can do it." 140 F.3d at 888. We see no principled way to distinguish the statement in Castillo from the one at issue here. Additionally, the district judge's reference to Browning's "long record" implies that the refusal to depart was based on "the defendant's particular circumstances." Id. at 887. At the very least, the statement is ambiguous, which leaves us without jurisdiction to review it.

**IV**

The judgment of the district court is **AFFIRMED**.

-15-