**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 23 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ARTURO MENDEZ-HOLGUIN,

      Defendant-Appellant.

No. 02-3377
(D.C. No. 02-20010-01-CM)
(D.Kan.)

## ORDER AND JUDGMENT[*]

Before **EBEL**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

Arturo Mendez-Holguin (the "Defendant") was charged in a one count indictment filed on February 6, 2002, in the United States District Court for the District of Kansas with illegal re-entry by a deported alien previously convicted, in a district court in Wyandotte County, Kansas, of attempted possession of cocaine with an intent to sell, in violation of 8 U.S.C. § 1326 (a) and (b)(2). On July 15, 2002, the district court, after hearing, accepted a change of plea to guilty

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

of the charge. At the change of plea hearing, Defendant was represented by Michael Harris, an assistant federal public defender. At the outset of the hearing, counsel stated that though the Defendant "does speak English, I have found with some of the legal concepts it is helpful to have an interpreter just so there isn't any miscommunication." Accordingly, an interpreter was also present and, after being sworn, he participated in the proceeding.

A revised presentence report was filed with the court on September 18, 2002. In that report, the Defendant's adjusted offense level was set at 13, which, coupled with the Defendant's criminal history category of IV, set his guideline range at 24 to 30 months imprisonment. The report stated that the "probation officers have no information . . . which would warrant a departure from the prescribed sentencing guidelines." No objection to the report was filed by the United States or by the Defendant or his counsel.

On September 20, 2002, the Defendant filed, pro se, a two page, single spaced, typewritten "Motion for Downward Departure Due to Family Ties and Hardship in the Alternative Reduction of Sentence." In that motion (typed in English), Defendant stated, *inter alia*, that he re-entered the United States after his deportation so he could attend a custody hearing to be held in Kansas concerning his three-year-old daughter. In that same motion, on a different matter, Defendant also stated as follows:

2

> Through the advice of court-appointed counsel, Michael Harris, defendant plead guilty to illegal re-entry 1326(a) but did not explain to this defendant that an additional charge of being an aggravated felony 1326(b)(2). With the additional charge the guideline range was put past the term's this defendant understood as being the plea bargain. <u>The understanding of this defendant was that the time of incarceration would not exceed 30 months.</u> (Emphasis added).

The government, on September 29, 2002, filed a response to that motion. The government conceded that, under the Sentencing Guidelines, "family circumstances and responsibilities are a permissible but discouraged departure factor." U.S.S.G. §5H1.6. The government's position was that the motion be denied because "the Defendant has simply failed to meet his burden of showing that a departure was warranted."

A sentencing hearing was held on November 7, 2002, at which time Defendant and his attorney, Michael Harris, and an interpreter, were present. At the outset of the hearing, Harris again indicated to the court that since the Defendant did not speak or understand much English, it would be "helpful to have an interpreter for the more complicated legal matters." The interpreter was thereafter sworn. Also, at the outset of the sentencing hearing, the district court stated that it had received a letter dated August 21, 2002 from the Defendant "requesting a new attorney." The Defendant indicated to the court at that time that he wanted a hearing on his request for a new attorney on the ground that his attorney was "ineffective" and had not "properly represented" him. The court

3

then swore the Defendant and questioned him, through an interpreter, on that matter.  Based on the ensuing colloquy between the court and the Defendant, it would appear that Defendant's request for new counsel was based on his claim that Harris had not informed him, prior to his change of plea, that because his deportation was after he had been convicted of an aggravated felony, his base offense level of 8 would be raised by 8 levels under the guidelines.  Harris, at that point, orally moved the court to permit him to withdraw as counsel for the Defendant.  In so doing, Harris agreed that <u>if</u> he had failed to tell the Defendant about the fact that Defendant's base offense level would, under the guidelines, be raised by 8 levels because of his prior conviction, he would have been "ineffective."  He added, however, that there "might be some disagreement that I would have with the statement that Mr. Mendez has given the court under oath," stating that the "attorney client privilege would preclude me from being more candid with respect to that."

The district court thereafter stated that he had just reviewed the transcript of the hearing at which Defendant asked to change his plea to one of guilty, and that he would deny Defendant's request for a "new attorney" because, in effect, the Defendant "knew the consequences" of the charge he desired to plead guilty to.  The court stated that it intended to proceed with the sentencing hearing.

As concerns the presentence report, in response to the court's inquiry,

4

Harris then spoke as follows:

> No, Judge. We received the original draft of the presentence report back in July. Copy of that was provided to Mr. Mendez. He and I met on two occasions to go over the report. Second time specifically was to go over criminal record history calculations under the report and the effect of the Wyandotte County conviction and the revocation of supervised release federally which occurred in front of Judge VanBebber, and how those computed under the guidelines. I made copies for Mr. Mendez of the appropriate guideline sections dealing with criminal record history, and found the report to be factually correct.

At this juncture, the district court then spoke as follows:

> At this time, the court would find that for purposes of sentencing, the total offense level should be a total offense level 13 [the Defendant's offense level was reduced by 3 levels for acceptance of responsibility] and a criminal history category of 4. At this time – at this state of our sentencing hearing, are there any objections to the total offense level or the criminal history category? Mr. Patton?
> MR. PATTON: No, your honor.
> THE COURT: Mr. Harris?
> MR. HARRIS: No, Judge, there are not.

The government indicated that it had no objection to the court's calculation of Defendant's offense level, as did Harris.

The court then proceeded to consider Defendant's pro se request for a downward departure. In connection therewith, the government stated that it opposed any downward departure on the basis of "family circumstances and responsibilities." Harris responded by stating that he, and the Defendant, knew that the reason for returning to the United States did not expiate the crime of unlawfully returning to the United States, but that his reason for returning was

5

based on "rather unique family circumstances."

The district court then denied Defendant's pro se motion for downward departure, and in connection therewith spoke as follows:

> In your case, the court is sympathetic to your plight of your hardships and for your reasons for re-entering the United States. The court cannot conclude, though, that your circumstances place you outside the heartland of cases as contemplated by the guidelines. There simply exists no extraordinary circumstances upon which the court can justify a departure. Your motion for downward departure is denied.

The district court then proceeded to impose sentence. After noting the statutory penalty was up to 20 years, and that the guideline range was 24 to 30 months, the district court imposed a sentence of 24 months. We note that Defendant had informed the court in this regard in his motion for downward departure that counsel had advised him that his "incarceration would not exceed 30 months," and it did not!

On appeal, counsel, who was appointed by this court to represent the Defendant, first argues that the district court erred in denying Defendant's pro se letter request for downward departure. As mentioned, in that letter the Defendant stated that his reason for returning was his desire to attend and participate in a custody hearing concerning his daughter in a state court of Kansas. (His reason for returning was also mentioned at the hearing when he changed his plea to guilty). The district court apparently was of the view that it could make a

6

downward departure based on "family responsibilities" but did not choose to do so under the circumstances. In this regard, U.S.S.G. § 5H1.6 provides as follows:

> Family Ties and Responsibilities, and Community Ties (Policy Statement)
>
> Family ties and responsibilities are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range.
>
> Family responsibilities that are complied with may be relevant to the determination of the amount of restitution or fine.

This court generally does not have jurisdiction to review a sentencing court's refusal to make a downward departure except in the rare cases where the sentencing court states that it does not have the authority to do so. *United States v. Browning*, 252 F.3d 1153, 1160-61 (10th Cir. 2001); *United States v. Castillo*, 140 F.3d 874 (10th Cir. 1998). That is not our case. And counsel does not contend in this court that the district court erred in denying a downward departure based on so-called "family responsibilities." Rather, counsel argues that the district court erred in not considering whether, for the reasons the Defendant gave in his pro se motion for downward departure, explaining why he returned, he might be entitled to a downward departure under the "lesser harm" guideline, i.e., U.S.S.G. § 5K2.11, which provides as follows:

> Lesser Harms (Policy Statement)
>
> Sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate, provided that the circumstances significantly

7

diminish society's interest in punishing the conduct, for example, in the case of a mercy killing. Where the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted. For example, providing defense secrets to a hostile power should receive no lesser punishment simply because the defendant believed that the government's policies were misdirected.

In other instances, conduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue. For example, where a war veteran possessed a machine gun or grenade as a trophy, or a school teacher possessed controlled substances for display in a drug education program, a reduced sentence might be warranted.

The lesser harm issue was not raised, as such, in the district court, but counsel suggests that it was error for the district court not to do so, *sua sponte*. We do not agree with that suggestion. Since the issue was not raised in the district court, we are not inclined to consider it for the first time on appeal. *Walker v. Mather,* 959 F.2d 894, 896 (10th Cir. 1992). On the basis of the Defendant's motion for downward departure, the district court did not have the burden to search the record, as well as the guidelines, for all possible bases for a downward departure.

Counsel on appeal also argues that the district court erred "when it did not inquire into a conflict brought to its attention or appoint substitute counsel." The district court <u>did</u> make inquiry. The district court, which, just prior to sentencing, had reviewed the transcript of the change of plea hearing, heard the testimony of the Defendant through the aid of an interpreter, and the statement of his counsel,

8

and based on such inquiry, the court denied Defendant's request for new counsel.

A district court's denial of a motion to substitute counsel is reviewed for abuse of

discretion. *United States v. Anderson*, 189 F.3d 1201, 1210 (10th Cir. 1999). The

district court did not abuse its discretion.[1]

 

       Judgment affirmed.

                                        Entered for the Court

                                        Robert H. McWilliams
                                        Senior Circuit Judge

---

[1]On the merits, we would note that defendant's request for new counsel was apparently based on his belief that his appointed attorney had not advised him before his change of plea that his base offense level could be raised 8 levels because of his prior conviction of aggravated felony, and his "understanding that the time of incarceration would not exceed 30 months." (The latter was set forth in defendant's motion for downward departure). As has already been mentioned, with the 8 level increase in his base offense level because of his prior conviction, the guideline range was 24 to <u>30</u> months (i.e. it did not "exceed 30 months"), and he was sentenced to 24 months.