F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellant,

v.

GERARDO ALARCON,

  Defendant-Appellee.

No. 03-1307
(District of Colorado)
(D.C. No. 03-CR-114-M)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BALDOCK**, and **MURPHY**, Circuit Judges.

## I. INTRODUCTION

Defendant-appellee Gerardo Alarcon was arrested when a SWAT team executed a search of a third-party's apartment. The SWAT team found two kilograms of cocaine in the apartment. Alarcon was charged with conspiracy to

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

distribute a controlled substance in violation of 21 U.S.C. § 846, and with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).

Alarcon moved to suppress his confession, arguing that it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). The United States District Court for the District of Colorado granted Alarcon's motion to suppress, concluding that Alarcon had not executed a valid waiver of his *Miranda* rights. The court based this conclusion on its finding that Alarcon, a native Spanish speaker, had not understood the *Miranda* warning or waiver, which were given to him in English.

The government appeals the suppression of Alarcon's confession. Exercising jurisdiction pursuant to 28 U.S.C. §1291 and 18 U.S.C. § 3731, this court **affirms** the district court's suppression of Alarcon's confession.

## II.    BACKGROUND

Alarcon was in one Christian Saenz-Sanchez's apartment when the SWAT team entered it to execute a search warrant. The SWAT team handcuffed and arrested Alarcon and took him to the police station.

The parties contest whether or not Alarcon understood the *Miranda* rights read to him in English. A Spanish speaking officer testified that he asked Alarcon, in Spanish, whether he preferred to be interviewed in English or

Spanish. On cross examination, the officer did not recall whether he also offered to read Alarcon his *Miranda* rights in Spanish. The officer testified that Alarcon preferred to be interviewed in English. The officer did not, however, ask Alarcon how well he understood English. Alarcon, on the other hand, testified that the police just spoke to him in English without ever giving him the option of being given his *Miranda* warnings or interrogation in Spanish. Alarcon testified that the police did not start speaking Spanish to him until the latter part of the interview, when they realized that he could not understand them.

Alarcon answered "yes" to the following question on the *Miranda* waiver form: "Do you read, write, and understand English?" After signing the *Miranda* waiver, Alarcon confessed to the police, at first by answering in English, and later in Spanish. At his court appearances, Alarcon answered the magistrate judges in simple English, primarily "yes" and "no" answers, and declined an interpreter on at least one occasion. Alarcon explained that he declined the interpreter because the two defendants who had hearings before him were only asked questions that could be answered with a yes or a no, and he was "trying to look good in court." Alarcon answered "yes, sir" when one magistrate judge asked him if he spoke English fluently. Alarcon testified, however, that he only understood the court proceedings after they were interpreted for him.

Alarcon testified that he understood neither the *Miranda* warnings he was given nor the waiver he signed, but that he "kn[e]w that it was laws." Alarcon claimed that he can only understand "bits and pieces" of spoken English and must translate word for word in order to attempt to understand sentences. He testified that he can only read some English words and that his wife translates English correspondence for him. Alarcon noted that he often feigns to understand what is being said to him in English because he is ashamed to admit his lack of English proficiency.

Similarly, Nubia Millan, Alarcon's wife, testified that he has difficulty understanding English and that she acts as his interpreter. Millan testified that Alarcon would answer the court in simple English words such as "yes," and then turn to her and ask her to interpret what had transpired. After court appearances, Millan had to interpret the substance of the hearings into Spanish for Alarcon to comprehend them. She testified that Alarcon will pretend to understand those who speak to him in English in order to appear respectful and cooperative.

## III.   DISCUSSION

When reviewing a district court's grant of a motion to suppress, this court considers the totality of the circumstances and views the evidence in the light most favorable to the defendant. *See United States v. Mitchell*, 274 F.3d 1307, 1310 (10th Cir. 2001). This court accepts the district court's factual findings

unless those findings are clearly erroneous. *Id.* The ultimate determination of waiver is a question of law subject to *de novo* review. *United States v. Toro-Pelaez*, 107 F.3d 819, 826 (10th Cir. 1997).

The government argues that the district court committed clear error when it found that Alarcon did not understand the *Miranda* rights that were read to him in English. In turn, the government argues, the district court erroneously concluded that Alarcon did not knowingly and voluntarily waive his *Miranda* rights. The government asks this court to reverse the district court's suppression of Alarcon's confession.

The district court did not commit clear error when it found that Alarcon did not understand the *Miranda* rights which were read to him in English. This court will not reverse for clear error unless, after reviewing all the evidence, it is left with a definite and firm conviction that a mistake has been made. *Manning v. United States*, 146 F.3d 808, 812 (10th Cir. 1998). The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. *United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001) (quotation omitted).

The evidence presented at the suppression hearing in this case can support either a finding that Alarcon understood English or one that he did not. The government's witnesses testified that Alarcon conversed with the officers in

English and did not seem to have trouble understanding them. Alarcon and Millan, on the other hand, testified that Alarcon can understand nothing but the most elementary English words and phrases, such as "yes," "no," "wife," "son," and "where do you live." Both Alarcon and Millan testified that Alarcon often pretends to understand English because he wants to appear cooperative and is ashamed to admit his lack of English proficiency. Most importantly, Alarcon specifically testified that he did not understand the *Miranda* rights which were read to him in English. Thus, the issue of Alarcon's ability to comprehend the English *Miranda* warnings turns entirely on the credibility of witnesses. This court will not substitute its own opinion of how the evidence should have been weighed for the district court's assessment of the proper weight of the evidence and of the credibility of witnesses. *Browning*, 252 F.3d at 1157. Therefore, this court cannot say that it is left with a definite and firm conviction that the district court erred when it found that Alarcon did not understand the *Miranda* warnings.

In light of this factual finding, the district court did not err in concluding that the waiver was not knowing and intelligent. A waiver is knowing and intelligent if it is made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Warnings given in a language which the defendant cannot comprehend do not convey the substance of the suspect's rights. *See United States v. Bustillos-Munoz*, 235 F.3d 505, 517 (10th Cir. 2000) (waiver

knowing and intelligent because imperfect translation into a language which defendant understood conveyed the substance of the rights waived); *United States v. Hernandez*, 93 F.3d 1493, 1502 (10th Cir. 1996) (same); *United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) (acknowledging that language barriers may inhibit a suspect's ability to knowingly and intelligently waive his *Miranda* rights).  Alarcon did not understand the rights which were read to him in English.  It would be illogical for this court to conclude that Alarcon "at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction" when he could not comprehend the language in which the warnings were read to him.  *See Burbine*, 475 U.S. at 422-23; *Hernandez*, 913 F.2d at 1510.  Because Alarcon's waiver was not knowing and intelligent, he did not validly waive his *Miranda* rights.[2]  The district court therefore did not err in suppressing Alarcon's confession.

---

[2]Because this court concludes that Alarcon's waiver of his *Miranda* rights was not knowing and intelligent, it need not reach the question of whether it was voluntary.  *See Moran v. Burbine*, 475 U.S. 412, 421 (1986) (a valid waiver of *Miranda* rights must be both voluntary *and* knowing and intelligent).

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's order suppressing Alarcon's confession.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge