**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff/Appellee,

v.

CLAUDIO CAMPAS,

        Defendant/Appellant.

No. 03-8081, 03-8082

District of Wyoming

(D.C. No. 02-CR-81-D)

---

**ORDER AND JUDGMENT** [*]

---

Before **EBEL**, **MURPHY**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f). The case is therefore submitted without oral argument.

Claudio Campas appeals his conviction of possession of methamphetamine with intent to deliver, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The first question is whether the district court erred in denying his motion to suppress evidence resulting from a search of his automobile. The second is whether the district court abused its discretion in failing to order a mental evaluation or conduct a hearing when the defendant requested a mental evaluation. We affirm.

**I. The Search**

On March 29, 2002, Mr. Campas was driving east on I-80 near Laramie, Wyoming, in a pickup truck with California license plates. A Wyoming highway patrolman observed the truck crossing over the center line and fog line, and stopped him for this apparent violation. The patrolman asked Mr. Campas to come to the patrol car while he issued a warning citation. While he was there, the patrolman asked his dispatcher to check Mr. Campas's drivers license and criminal history; the patrolman learned that Mr. Campas had a drug-related criminal history dating back to the 1950s but had no outstanding warrants. The patrolman completed the warning citation, returned Mr. Campas's drivers license and paperwork, and told him he was free to leave. As Mr. Campas walked back toward his vehicle, and after brief conversation about where to find a good restaurant, the patrolman asked permission to ask a few more questions, to which Mr. Campas agreed. The patrolman asked whether he had any guns or illegal drugs in his vehicle. Mr. Campas said he did not. The patrolman asked for Mr.

Campas's consent to search the vehicle, and Mr. Campas consented.

The patrolman examined the underside of the truck, and noticed fresh scratch marks on the rear gas tank and the nuts and screws that held it in place. He also found that there was a new "C" clamp holding the spare tire in place, that the gas tank bolts had been sprayed with lubricant, and that the rear gas tank was empty. This made the patrolman suspicious that the gas tank had been removed from the vehicle and fitted for the storage of illegal drugs. The patrolman sent for his lieutenant, who confirmed his observations. After telling Mr. Campas of his suspicions, he asked Campas for permission to take the vehicle to the state garage for further inspection. Mr. Campas consented. There, agents discovered that an access plate had been cut into the gas tank. They found approximately sixteen bundles of suspected methamphetamine, weighing over 6,800 grams, secreted in the gas tank.

After hearing testimony and reviewing a video tape of the encounter, the district court denied Mr. Campas's motion to suppress. In a telephonic oral ruling, the district court held that "in this particular instance, there's no reason to question the voluntariness of the search, and the basis for the motion to suppress does not exist." The court elaborated:

> The traffic stop had ended. The individual was allowed to go on his way. He volunteered, without any sign of coercion, to a search of the vehicle. And never at any time that I could see on the tape, from the time he got into the vehicle when they started heading toward the Wyoming Highway

-3-

Department garage until it arrived, did he ever renege and say, "No, I changed my mind."

Defendant contends that his consent to the search was not freely and voluntarily given. He argues: "The trooper's testimony that Mr. Campas was free to leave and the remaining searches were consensual was not based on the facts." Def. Br. 10. In particular, he maintains that "he was not allowed to regain possession of his wallet," *id*. at 11, and that the fact that he was kept separate from his passenger somehow vitiated his consent.

On review of the denial of a motion to suppress, an appellate court must accept the district court's factual findings unless clearly erroneous, and view the evidence in the light most favorable to those findings. *United States v. Olguin-Rivera*, 168 F.3d 1203, 1204 (10th Cir. 1999)*; United States v. Little*, 60 F.3d 708, 712 (10th Cir. 1995). "The credibility of witnesses, the weight to be given evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court." *United States v. Browning*, 252 F.3d 1153, 1157 (10th Cir. 2001) (internal quotation marks omitted). The district court specifically found that Mr. Campas gave consent to the search, and that at the time he was asked for consent, the traffic stop had ended and he was free to go on his way.

We have carefully reviewed the record and Defendant's arguments, and find no basis for overturning the district court's conclusion that Mr. Campas

freely and voluntarily consented to the search of his vehicle. In particular, we do not believe that Mr. Campas's separation from his wallet means that his consent was nonconsensual. *See Florida v. Royer*, 460 U.S. 491, 501 (1983) (holding that the defendant was effectively "seized" when a government agent retained his drivers license and airline ticket). Mr. Campas does not claim that the patrolman retained his wallet; he testified that he left the wallet in his truck when he left the truck to go to the patrol car.[1] There is no evidence that its presence in the pickup truck had any effect on his consent to a search. As to his separation from the passenger, the district court found that after writing the warning citation, the patrolman told Mr. Campas he was free to go. At that point, he could have rejoined his passenger. Instead, he consented to the search. His separation from the passenger was a product of his consent, not his consent a product of the separation.

## II. Mental Evaluation

At the conclusion of testimony on the first day of trial, Mr. Campas told the district judge, outside the presence of the jury, that he had asked his attorney to have him mentally evaluated, and that his attorney had declined to do so. He did not set forth any facts or provide any explanation why a mental evaluation was

---

[1]Mr. Campas did not rely on the wallet problem in his suppression motion in district court, and the district court made no specific finding regarding it.

-5-

warranted. Defense counsel then addressed the court to explain the circumstances. He quoted from his letter to Mr. Campas in which he explained his refusal to obtain a mental evaluation. In that letter, counsel stated:

> A review of your last letter to me dated April 3, 2003, reiterates your bad-faith desire to have a mental examination. You are correct that I, quote, talked you out of it, unquote, the reason being that you told me you simply wanted to buy time, delay the trial, which constitutes no valid reason for the Court to expend time and monies. As an officer of the Court, I cannot condone such actions and will not participate in same.

The Assistant U.S. Attorney then informed the court that no issue regarding Mr. Campas's mental competency had previously been raised by any of the preceding three lawyers who had represented him. Defense counsel confirmed the prosecutor's statement, and added that he had seen "no evidence" of mental incompetency in his interactions with Mr. Campas. "The man is alert. He is on top of his game. He is very coy about a lot of things and very articulate about a lot of things."

The district court then rejected Mr. Campas's request, explaining:

I know of no reason, either directly from my own observation of you or indirectly or from any review of any materials in the files of this Court, that it's appropriate for you to have that evaluation at this hour, and I do not think it is appropriate, and I do not think it is necessary. There's nothing, not a scintilla of evidence, to suggest that you're not competent, now or in the past.

18 U.S.C. § 4241 provides:

At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for

the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

Whether to order a competency examination is reviewed for abuse of discretion. *United States v. Ramirez*, 304 F.3d 1033 (10th Cir. 2002); *United States v. Prince*, 938 F.2d 1092, 1095 (10th Cir. 1991). No competency examination is required when there is minimal or no evidence of incompetency. *United States v. Crews*, 781 F.2d 826, 833 (10th Cir. 1986).

Defendant candidly acknowledges that "[t]here are no facts in the record which support Mr. Campas's request, nor are there facts which suggest he was competent to stand trial or that he did not have some mental defect which could be raised as a defense." Def. Br. 16. In light of the absence of facts in support of the request, we cannot conclude that the district court abused its discretion.

Finally, to the extent Defendant is arguing that he received ineffective assistance of counsel in raising this claim at trial, he must assert that claim on habeas review rather than direct appeal. *United States v. Galloway*, 56 F.3d 1239, 1240-42 (10th Cir. 1995) (en banc).

The judgment of the United States District Court for the District of Wyoming is **AFFIRMED** .

Entered for the Court,

Michael W. McConnell
Circuit Judge